Hillsborough,
June 25, 1941. } No. 3246.

JOSEPH HASHIM *v.* GEORGE A. CHIMIKLIS.

*Denis F. O'Connor* (by brief and orally), for the plaintiff.

*Albert Terrien* (by brief and orally), for the defendant.

BURQUE, J. The first question that arises is whether the plaintiff is a licensee or invitee. We are of the opinion his status was that of a licensee. A licensee is one who is privileged to enter or remain on and use the premises of another by virtue of the latter's consent, whether by invitation or permission, and it is immaterial whether the consent which creates the license is an invitation—or a permission given upon request made by the licensee. The distinction between licensee and invitee is that a gratuitous licensee is any licensee other than a business visitor. 2 Restatement, Torts, *ss.* 330, 331. Use of the premises for one's own personal benefit is what makes the user a licensee; while if the premises are used for the common interest and mutual advantage of both the user and owner, by invitation expressed or implied, the user then becomes an invitee. 37 C. J. 161; 45 C. J. 788, *s.* 194; 25 W. & P. 192.

The duty owed by the owner or possessor of premises to a licensee is to give him reasonable information as to existing dangerous conditions, not open to his observation, of which the owner knows or should know. The licensee has the right to rely on a warning of risks which he may not, by the exercise of reasonable care, be expected to discover. 2 Restatement, Torts, *s.* 342; *Locke* v. *Payne*, 81 N. H. 266; *Tullgren* v. *Company*, 82 N. H. 268, 272.

Plaintiff, after transacting his business with the defendant, asked and received permission to use a toilet located in the rear of the store. The evidence is in conflict as to what really happened. Plaintiff says he was directed by the defendant's clerk, at the defendant's instruction, to where the toilet was, and proceeded thereto. Plaintiff says the toilet was in the dark; defendant contradicts this. Comment on the testimony as to which version is correct is unnecessary. It was for the jury to find who was to be believed. Plaintiff says as he stepped in the toilet his right foot went through a hole in the floor where a board was missing. He could see the floor and the top of the bowl just faintly. He says he received no warning of any danger incident to the use of the toilet, and the only warning defendant claims he gave plaintiff was to be careful because the entrance to the toilet was narrow and the toilet itself small. So that it is a findable fact, if not uncontroverted, that no efficient warning was given of any defect in the floor.

It now remains to determine whether defendant knew or should have known of the existing dangerous condition of the floor. Plain-

tiff says after the accident he asked defendant why he didn't fix the flooring inside, and defendant replied he could not afford it. Later plaintiff returned to defendant's store and talked with a clerk, who he pointed out as being present in the court room, who told plaintiff, "it was a shame he [defendant] didn't fix that"; "we are used of that so we can go without a light, we knew the floor was like that." The evidence was admitted without objection. This man took the stand and denied any such conversation. The jury could find from the above testimony that the condition existed, to the knowledge of the defendant, for some appreciable length of time before the accident happened, and consequently defendant should have warned the plaintiff. Having failed to do so defendant is chargeable.

Defendant apparently places his greatest reliance as a defence in the case on plaintiff's own negligence, for he argues at great length the question of contributory negligence. Plaintiff says he looked as much as he could, tried to and did see the floor and the outline of the board faintly, so he walked in. He says, "You know we live only one life and we should be on the level. I took the young man's word that this toilet was all right. I didn't think I was taking a chance of my life. I didn't figure I would be breaking my neck. He told me to go in there, and I did." True it is that defendant's attorney through persistent cross-examination elicits an answer occasionally that plaintiff "took a chance," but almost invariably such an answer is followed by subsequent explanations similar to the above. Having in mind all of the testimony on the point, the fact plaintiff had a right to assume the toilet was in a reasonably safe condition for use and that he received no warning to the contrary, and that he tried to and did see all that could be faintly seen, the question of contributory negligence was one of fact for the jury. It cannot be said plaintiff was negligent as a matter of law. *Heidenreich* v. *Dumas*, 88 N. H. 453 is not a comparable case.

Defendant moved to set aside the verdict because it was excessive, and the court denied the motion. In view of this ruling there is no question of law before us, unless said ruling cannot be supported by sufficient evidence in the case to warrant it. The ruling is equivalent to a finding of fact that there is enough evidence. *Cyr* v. *Railroad*, 88 N. H. 278, 282; *Wisutskie* v. *Malouin*, 88 N. H. 242; *Atherton* v. *Rowe*, 89 N. H. 196; *Leavitt* v. *Bacon*, 89 N. H. 383, 388. Is it warranted? Plaintiff received a severe injury to his shin, leaving a sensitive area over the upper third of the scar, which will be permanent. He had suffered pain from the time of the accident to the time

of the trial. That he will continue to suffer some pain is a findable fact. He saw a doctor only twice it is true, but had to treat the injury, and this he did himself. He was laid up more than a week immediately after the accident, during which time he could not use his leg, and had been bothered in the use of the leg ever since. It can also be found on the evidence that he will continue to be bothered. A claim is made that as the result of the accident he also has a looseness of the internal semi-lunar cartilage of the right knee. Even though we might discount the latter claim, (which seems to us too problematical to accept on its face value) we cannot say the verdict is excessive, and that the Presiding Justice erred in denying the motion to set the verdict aside as such.

*Judgment on the verdict.*

All concurred.