### Jeannine L. Smith v. Harry W. Monmaney, Doris L. Monmaney, William Speno and Emily Speno

[ 255 A.2d 674 ]

April Term, 1969

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 3, 1969

586

*John S. Burgess, Esq.,* and *Ralph Chapman, Esq.,* on the brief, for the Plaintiffs.

*Kenneth V. Fisher, Esq.,* for Harry W. Monmaney and Doris L. Monmaney.

*Ryan, Smith & Carbine* for William and Emily Speno.

**Holden, C.J.** The plaintiff seeks to recover in negligence for personal injuries in a fall on steps leading to the entrance to an apartment which she and her husband rented from the defendant William Speno. She and her family moved into the apartment about November 1, 1963. The section of the tenement house in which the plaintiff lived was known as 54 Frost Street. It consisted of three floors with an apartment on each floor. The tenement on the first floor was inadequate for the Smith family so the owner Speno rented them two additional

rooms and a bath on the second floor. Access to an apartment located on the third floor was through the plaintiff's dwelling.

There was a second entrance to these tenements at the rear of the building that was in serious disrepair. Mr. Speno kept the door to this entrance locked.

The accident occurred shortly before seven on the morning of January 10, 1964 while the plaintiff was leaving the premises on her way to work. The steps where the plaintiff fell were of cement construction. They were steep, narrow and unprotected from the weather by any overhanging roof. They afforded access from a front driveway and sidewalk to a porch at the entrance to the plaintiff's dwelling. There was a porch railing with newel-posts at the entrance to the steps. There were no handrails to guard passage on the steps.

The plaintiff's husband discussed with Mr. Speno the need for handrails at this location on at least two occasions. Mr. Speno stated he would get some one-inch piping for Mr. Smith to install for this purpose. The project, however, was left undone because the landlord did not provide the necessary materials.

About December 12, 1963 Mr. Speno informed the plaintiff that he intended to sell the premises to the defendants Monmaney. To secure the Smiths' tenancy, Mr. Speno offered them a written five year lease from that date. It specified a monthly rent payable in advance on the fifth day of each month. The plaintiff and her husband, as well as Mr. Speno, signed the lease.

The premises are described merely as—"Apartment consisting of seven rooms located at 54 Frost St., Brattleboro, Vermont." The plaintiff paid the rent to Mr. Speno on January 5, 1964 for the ensuing month. On January 8 the defendants Speno deeded the premises to the Monmaneys. Neither the plaintiff nor her husband knew of the sale until the vendee came to collect the rent in February.

During the evening of January 9 there was precipitation of rain, sleet and snow. About eleven o'clock, when the plaintiff's husband shoveled the sidewalk and driveway, it was wet and slippery. About 6:45 the following morning the plaintiff left her apartment for work. As she stepped off the porch to the top step she slipped on the surface and fell the length of the steps to the sidewalk at the bottom.

The plaintiff testified that when she came out of the house she thought the steps were wet, but she didn't realize they were icy until she stepped on them. She took hold of the post at the end of the porch

railing. As she stepped down to the first step her feet slid out from under her and she fell to the foot of the steps. When asked if she was able to use anything to hold on to, she replied "There was nothing there except a post on top of the porch. Once you got off the porch there was nothing to hold onto."

This is the sum of the plaintiff's evidence. When is was concluded, all defendants moved for directed verdicts. The trial court granted the Speno motion. The defendants Monmaney offered no further evidence and the case went to the jury. It returned a defendants' verdict. This appeal by the plaintiff assigns error in the court's direction of a verdict for the Spenos and questions the court's instructions to the jury in submitting the case as to the remaining defendant Monmaney.

■■ The determinant issue in ascertaining responsibility for negligence, arising from a dangerous condition on the land, is possession and control of the area which gives rise to the injury. *Garafano* v. *Neshobe Beach Club, Inc.,* 126 Vt. 566, 575, 238 A.2d 70; *Delphia* v. *Proctor,* 124 Vt. 22, 23, 196 A.2d 567; *Soulia* v. *Noyes,* 111 Vt. 323, 327, 16 A.2d 173. It is the landlord's duty to exercise reasonable care to maintain entrances and passageways retained in his control for the common use of tenants in multiple dwelling premises. *Wool* v. *Larner,* 112 Vt. 431, 435, 26 A.2d 89; 32 Am.Jur., Landlord & Tenant §652 (1968-69 Cum.Supp. p. 56); 52 C.J.S. Landlord & Tenant §417 (6). And the duty extends to proper diligence in keeping such areas reasonably safe from the dangers incident to accumulations of ice and snow. *United Shoe Machinery Corp.* v. *Paine* (CCA 1st) 26 F.2d 594, 58 A.L.R. 1398, 1404; *Reardon* v. *Shimelman,* 102 Conn. 383, 128 A. 705, 39 A.L.R. 287, 290; 32 Am.Jr., Landlord & Tenant §700; 52 C.J.S. Landlord & Tenant §417 (13).

■■ The duty of the person in control of the common passageways is not absolute and he is in no sense an insurer of the tenants' safety in these areas. *Goodman* v. *Corn Exchange National Bank & Trust Co.,* 331 Pa. 587, 200 A. 642, 643. Liability for injuries to the tenant is founded on negligence. *United Shoe Machinery Corp.* v. *Paine, supra,* 26 F.2d 594, 58 A.L.R. at 1403; citing *Sweeny* v. *Old Colony & N. R. Co.,* 10 Allen 368, 373; *Reardon* v. *Shimelman, supra,* 121 A. 705, 39 A.L.R. at 290.

In this connection we are mindful that this Court, in an opinion by Justice Slack in 1937, held that the absence of a handrailing, in

itself, will not constiute actionable negligence. *Dooley* v. *Economy Store, Inc.,* 109 Vt. 138, 141, 194 A. 375. But the case presented here involved other factors in the proof which were capable of taking the case to the jury on the issue of negligence.

■ The danger in the structural defects in the entranceway was aggravated by the accumulation of ice and snow that were bound to develop in the ordinary experience of the Vermont winter climate. The presence of this hazard upon the common approach to the tenement house is sufficient to compose a question for the jury on liability for injuries arising from the danger provided the person in control of the property knew, or in the exercise of reasonable oversight, ought to have known of the existence of the dangerous condition and failed to provide reasonable safeguards against it. *Reardon* v. *Shimelman, supra,* 121 A. 705, 39 A.L.R. at 290. This concept is entirely consistent with the established doctrine of our cases in this area of the law of negligence. *Wool* v. *Larner, supra,* 112 Vt. at 435, 26 A.2d 89; *Beaulac* v. *Robie & Slayton,* 92 Vt. 27, 30, 102 A. 88; Restatement, Torts 2d §230.

The evidence was sufficient to support a jury finding that the landlord retained control of the steps where the injury occurred. The written lease from the Spenos to the plaintiff, coupled with oral testimony that the steps and front porch leading to the plaintiff's tenement provided access to another dwelling in the building, permitted the inference that this was a common entrance which remained in the control of the landlord. There was no evidence from any of the defendants to repel that conclusion.

■ The landlord's duty to maintain the steps and entrance to the tenements in a reasonably safe condition existed whether he undertook to perform that duty or not. The fact that the husband volunteered to keep the steps and sidewalk clear of ice and snow will not exempt the landlord in the event of a negligent injury. *Ahearn* v. *Roux,* 96 N.H. 71, 69 A.2d 701, 702.

■ Ordinarily the transfer of title and possession of the premises will protect the vendor from liability to those injured after his grantee takes possession. *Kilmer* v. *White,* 254 N.Y. 64, 171 N.E. 908, 910; Restatement, Torts §352. The brief, submitted by the defendants Speno, relies principally on the warranty deed which they executed to

the Monmaneys on January 8, 1964. They point out that their vendees had constructive possession of the subject premises from the date of the deed. Against this, there is evidence undisputed that Mr. Speno went onto the premises after the accident to reduce the danger and applied ashes to the approaches to the plaintiff's apartment and the neighboring tenement as well.

The defendent Speno had collected the rent for the period in which the accident occurred only a few days before that event happened. It also appears, without contradiction, that the plaintiff and her husband did not know of the change in landlords until February when the Monmaneys came to collect the rent.

 Despite the transfer of title on January 8, 1964, other facts presented in the plaintiff's evidence were sufficient to justify a finding by the jury that the Spenos continued in possession and control of the tenement house at the time the accident occurred. And consistent with established concepts in the law of negligence, the facts presented were sufficient to charge the defendants Speno with foresight of harm to the plaintiff, under conditions of ice and snow, if reasonable safeguards were not provided. *Ahearn* v. *Roux, supra,* 96 N.H. 71, 69 A.2d at 702; *White* v. *Herbst,* 128 Conn. 659, 25 A.2d 68, 69; *Esserman* v. *Madden,* 123 Conn. 386, 195 A. 739, 740; see also Annotation 26 A.L.R.2d 626.

██ If that consequence was foreseeable and the defendants' neglect produced the harm, the mere transfer of the property would not discharge the Spenos from their duty to their tenant. Neither would it excuse them from its breach. *Derby* v. *Public Service Co. of N.H.,* 100 N.H. 53, 119 A.2d 335, 340; *McCabe* v. *Cohen,* 294 N.Y. 522, 63 N.E.2d 88; see also *Pharm* v. *Lituchy,* 283, N.Y. 130, 27 N.E.2d 811; *Kilmer* v. *White, supra,* 254 N.Y. 64, 171 N.E. 908, 910; Harper & James, The Law of Torts, §27, 18; Restatement, Torts 2d §353. The order directing a verdict for the defendants Speno was in error.

The remaining question is whether the verdict of the jury in favor of the defendants Monmaney was reached on adequate and proper instructions by the trial court. The plaintiff advances two objections in this aspect of her appeal.

██ The appellant assigns error to the lower court's denial of her request to charge the jury that an agreement by the vendors Speno

to repair the premises and keep them safe for occupancy was binding upon the Monmaneys as vendees. The complaint makes no reference to any agreement to repair by the lessors or their successors. It alleges that the defendants owned and controlled the subject premises. The case was tried and submitted accordingly,—on the landlord's duty and responsibility concerning dangerous conditions in an area over which he retained control. On this theory of the case, Speno's undertaking in regard to the handrails concerned an area outside the lease. It was some evidence of the landlord's control, as well as an indication of his knowledge of the danger. But Speno's undertaking in this regard did not bind his vendee to affirmative action, particularly in the absence of evidence that he knew of it. Also, there was little or no opportunity to act within the limited time of his ownership. See *Pharm* v. *Lituchy, supra,* 283 N.Y. 130, 27 NE.2d 811, 812. Since the requested instruction was inappropriate to the pleadings and beyond the reach of the evidence, it was properly denied.

The plaintiff objected to the court's submission of the issue of her assumption of risk. The defense was urged by all defendants. And it was one of the grounds advanced by the Spenos in support of their motion for a directed verdict. In submitting the issue to the jury in the Monmaney case, on the same state of the evidence that preveiled at the time of the directed verdict, it is apparent that the ordered verdict was not based on this defense. The same is true of the defense of contributory negligence.

This is consistent with the supplemental brief filed by the defendants Speno. Without yielding in any way from their position that they were entitled to be dismissed from liability by the court, in the alternative, they urge that the issues of contributory negligence and assumption of risk were properly submitted to the jury.

■ The facts presented here made it permissible for the jury to find that the plaintiff assumed the risk created by the defendants' failure to keep the steps reasonably safe. However that was not the limit of the danger nor her risk. The top step was coated with ice, although the plaintiff testified she thought it was only wet. In the breaking daylight early in January, the deception would be understandable. The issue was for the jury to resolve.

The plaintiff was deprived of the choice of a safer route. See *Baldwin* v. *Vermont Railways,* 126 Vt. 70, 76, 223 A.2d 556. And

where she exercised reasonable care for her own safety in not waiting from work until the steps were sanded or their condition known, relates to the issues of contributory negligence. Restatement, Torts §466; Harper & James, The Law of Torts §21.1. In any event, both defenses were properly submitted to the jury. *Berry* v. *Whitney,* 125 Vt. 383, 387, 217 A.2d 41; *Manley* v. *Haus,* 113 Vt. 217, 223, 32 A.2d 668.

We find no error in the verdict which the jury returned in favor of the defendants Monmaney. Since the question of liability on the part of the defendants Speno was erroneously withheld from the jury, the cause must be remanded for retrial of that aspect of the case.

*Judgment is affirmed as to the defendants Monmaney. The judgment entered on the directed verdict for the defendants Speno is reversed and cause remanded.*

**Shangraw, J.,** (dissenting in part). I agree that the judgment should be affirmed as to the defendants Monmaney. I am unable to agree with the majority that it was error to direct a verdict in favor of defendants William Speno and Emily Speno.

The general rule, as I understand it to be, is that a seller of realty is not liable for injury to a buyer in possession, or to any third party, which is caused by a dangerous condition on the premises, whether natural or artificial, which existed when the buyer took possession. *Hut* v. *Antonio* v. *Guth* (1967) 95 N.J.Super. 62, 229 A.2d 823, 826; *Sarnicandro* v. *Lake Developers, Inc.,* 55 N.J.Super. 475, 151 A.2d 48, 50, 65 C.JS. Negligence §93, p. 1046. This has been true even though the vendor has failed to make repairs after receiving notice of the dangerous and defective condition. 65 C.J.S. Negligence, *supra,* p. 1047. See cases cited.

The general rule of non-liability on part of a vendor has some exceptions. I do not consider that any of the exceptions to the general rule are applicable to the facts presented in this case.

A voluntary sale of premises by a landlord terminates the relation of landlord and tenant as between the original lessor and tenant, even though the lease, as such, is not terminated by a sale of the premises. 51C C.J.S. Landlord & Tentant §93(2), p. 301.

In the case now considered, Mr. and Mrs. Speno did not reserve possession of the property. The relations of vendor-vendee and landlord-tenant arise out of totally different types of transactions and contemplate entirely different types of possession. In an absolute

sale, a vendor divests himself of title and all right of possession or of re-entry for repairs or for any other purpose. Following a transfer of ownership and possession of real estate to vendee without reservation, a vendor of realty is in no position to control the use thereof.

I believe it may be assumed that a purchaser of real estate usually purchases with opened eyes. The facts in this case reveal that the lack of railing on the steps in question, was not a latent condition, but clearly a patent one,—one which the purchaser could have readily discovered by taking a view. This condition cannot be considered a concealed or undisclosed hazard; on the contrary it was open and visible. The Spenos had no reason to believe that the Monmaneys would not have discovered the lack of a railing or realized the risk.

No claim is made that there was anything wrong structurally with the steps other than the absence of a railing. Here, the ice on the steps was the dominant factor which caused the accident. This condition came in existence after the transfer of the property. There was nothing latent, secret or hidden about the ice. It was open and observable to the plaintiff. She was an habitual user of the steps.

This is not a case where a plaintiff falls from a veranda solely by reason of the absence of a guard railing. As I view the evidence, the accident would not have occurred except for the presence of ice on the steps. This icy condition developed after the transfer and possession of the property vested in the Monmaneys. The icy condition was not created by the Spenos.

Aside from the legal isues in the case, the evidence demonstrates that plaintiff was aware that her husband had salted the steps the evening previous to the accident, which to say the least, called for extra caution on her part at the time of the accident.

If the practical aspects of such a case are to be considered, it may be a real dilemma, in that a vendor of property would be uncertain when his liabilities in connection with the ownership of property cease. If it is a reasonable time after the transfer,—what is a reasonable period? How long would a vendor's liability continue? When and where would the line be drawn? These very questions would unjustly breed litigation.

I would affirm the directed verdict and judgment thereon in favor of William and Emily Speno.

I am authorized to say that Justice **Keyser** joins in the views expressed in this dissent.